IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

|  |  |  |
|---|---|---|
| In re: | : | Case No. _____ |
|  | : |  |
| *Ex Parte* Application Pursuant to 28 U.S.C. §1782 for an Order to Take Discovery of Equiti US, LLC, Gary Dennison, James Mason and Kimberly M. Kirkland for Use in a Foreign Proceeding | : | *Filed EX PARTE* |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER TO TAKE DISCOVERY OF EQUITI US, LLC, GARY DENNISON, JAMES MASON AND KIMBERLY M. KIRKLAND FOR USE IN A FOREIGN PROCEEDING**

This Memorandum of Law is submitted in support of: (1) Oak Trust, (2) Acorn Trust, (3) Eagle Trust, (4) Duffy Trust, (5) Robert J. Parfet Living Trust, (6) Geluk Global Fund Limited SAC (a company incorporated in the Bahamas), (7) Migration Investments, LLC (a Colorado, US LLC), (8) Boustrophedon International Ltd (a company incorporated in Hong Kong), (9) Michael R. Shea, (10) Erin Shea, (11) Angela Ling, (12) Fuhua Ling, (13) Philip Bullock, (14) Lifang Liu, (15) Justin Payne, (16) Michael Dietzen, (17) Kimberly J. Dietzen, (18) Brian Sly, (19) David K. Sly, (20) Gregory Sly, (21) Karen Sly, (22) Nelson Sly, (23) Helen S. Sly, (24) Sly Family Trust, and (25) Tamara A. Sly Separate Property Trust's (together the "Applicants") *Ex Parte* Application Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Equiti US, LLC, Gary Dennison, James Mason, and Kimberly M. Kirkland for Use in a Foreign Proceeding (the "Application"), allowing it to serve a Subpoena *Duces Tecum* and Subpoena *Ad Testificandum*, attached to the Application as Exhibits A through H, upon Equiti US, LLC ("Equiti US"); Gary Dennison ("Dennison"), James Mason ("Mason"); and Kimberly M. Kirkland ("Kirkland")

(together the "Respondents") in order to collect documents and testimony that may be used in an anticipated proceeding in the High Court of England and Wales in London, England (the "U.K. Proceeding"), and in which Applicants expect to be claimants, as more fully described below.

## SUBJECT MATTER JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this Application pursuant to 28 U.S.C. § 1331, and on the basis that the Application is being made pursuant to 28 U.S.C. § 1782. Venue in this District is proper pursuant to 28 U.S.C. § 1782 because discovery is being sought from an entity whose principal place of business is located within this District and from individuals who reside within this District.

## BACKGROUND

**A.  Summary of Facts Supporting Applicants' Claims in the U.K. Proceeding**

In their anticipated filing before the High Court of England and Wales, Applicants expect to allege violations of the laws of England and Wales based on the wrongful conduct of Equiti Capital UK Limited ("Equiti UK") in its facilitation and concealment of a fraudulent Forex trading scheme (the "Blue Isle Fraud") operated by the common owners and principals of Mediatrix Capital Inc. ("Mediatrix"), Blue Isle Markets Inc. ("Blue Isle 1"), and Blue Isle Markets Ltd. ("Blue Isle 2") (collectively referred to as "Blue Isle"), in which Applicants invested. *See* Declaration of Robert K. Campbell ("Campbell Decl.") submitted herewith, ¶¶3-4.

The Blue Isle Fraud involved multiple components. First, Blue Isle fraudulently induced investment through material misrepresentations, including regarding the profitability of their trading history, the value of their assets under management, having audited trading results, and their regulated status. *Id*. ¶5. Then, Blue Isle fraudulently induced investors to maintain and/or increase their investments by falsifying investors' account statements to show phantom profits and

making Ponzi-like payments to investors who opted to cash out their "profits," all in an effort to prop-up the façade of profitable trading and perpetuate the Blue Isle Fraud. *Id*. Ultimately, Blue Isle's fraudulent scheme resulted in massive trading losses of the funds that were invested in order to further perpetuate the fraud and allowed Blue Isle to misappropriate funds—both directly and through taking unearned performance fees based on falsified trading results. *Id*.

On the basis of currently available information, Applicants understand the relationship between Equiti UK and Blue Isle began in or around February-March 2016 when under its direction and supervision, Equiti UK's wholly-owned subsidiaries in the U.S. and Armenia entered into agreements with Blue Isle. *Id*. ¶6. The relationship between Blue Isle and Equiti UK was subsequently formalized in a customer agreement dated June 12, 2017. *Id*. From February-March 2016 until September 2019, Equiti UK provided brokerage services, trade execution and margin services to Blue Isle for which it appears to have earned and claimed more than $12 million in circumstances where it knew, or alternatively should have known, that Blue Isle was operating a fraudulent scheme of which Applicants were victims. *See* Campbell Declaration *Id*. ¶6 Further, Equiti UK failed to perform adequate due diligence both initially and on an ongoing monitoring basis, which had they performed—as they represented to investors that they did—would have revealed "red flags" that became more numerous and severe with the passage of time and which should have alerted it to the fraudulent nature of Blue Isle's scheme. *Id*. Equiti UK should have inquired further into Blue Isle in the face of the escalating "red flags," including for example, when Blue Isle told Equiti UK it had $25 million in assets and was trading "$15 billion+" annually. In sum, the Blue Isle Fraud was made possible by, among other misconduct, Equiti UK's knowing assistance and/or deliberate blindness. *Id*.

**B.     Anticipated U.K. Proceeding**

As a result, on the basis of the information currently available, Applicants intend to pursue claims against Equiti UK pursuant to the laws of England and Wales for damages and/or equitable compensation under various legal theories stemming from Equiti UK's role in connection with the Blue Isle Fraud. *See* Campbell Decl., ¶ 7.

**C.    Documents and Testimony Sought from Respondents**

Applicants seek relevant documents and testimony from the Respondents to prepare for the anticipated U.K. Proceeding. The documents and testimony sought in this *ex parte* application have not ever been provided to Applicants. *See* Campbell Decl., ¶ 22.

The Respondents are in possession of information and/or documents relevant to Applicants' claims in the U.K. Proceeding. Specifically, Equiti US, a Florida registered limited liability company, is a wholly-owned subsidiary of Equiti UK that provided technology and support services to help facilitate Blue Isle's trading through Equiti UK. *Id.*, ¶ 15. Equiti US also assisted Equiti UK in soliciting investors for Blue Isle, participated in regular meetings between Equiti and Blue Isle, provided services directly to Blue Isle investors, and was directed and supervised by Equiti UK. *Id.* While Equiti US is a subsidiary of Equiti UK, Equiti UK has repeatedly asserted that each is a separate legal entity with its own governance, services, offices, personnel, and books and records.[1]

As a subsidiary of Equiti UK, that closely partnered with Equiti UK to provide services to Blue Isle, Equiti US likely possesses documents and information regarding, among other things, (1) Equiti UKs facilitation of the Blue Isle Fraud; (2) the ownership and organizational structure

---

[1] *See, e.g.*, *Motes v. Equiti UK Ltd., et al.*, No. 9:20-cv-80599-DMM (S.D. Fla., filed April 7, 2020), Dkt. No. 22-1 (representing that Equiti UK, unlike Equiti US, "(a) is not licensed to do business in Florida; (b) does not carry out business in Florida (or in any other US state); [and] (c) has no address, offices, or employees in Florida"

of Equiti entities; (3) the flow of investor funds into accounts at Equiti UK; (4) Equiti UK's provision of brokerage services and liquidity to Blue Isle; (5) Equiti UK's participation in the solicitation of investors for Blue Isle; (6) provision of account statements and customer support to Blue Isle investors; and (7) due diligence performed on Blue Isle. *Id.* ¶ 16. Gary Dennison is the Chief Operating Officer of Equiti US who was involved in managing the Blue Isle relationship for Equiti UK and likely possesses documents and information relevant to these topics as well. *Id.*

Mason is the former Chief Operating Officer at Equiti US. Mason was Equiti US's officer also in charge of managing the Blue Isle relationship and regularly corresponded with Equiti UK regarding Blue Isle. *Id.*, ¶ 17. In December 2019, Mason filed a Verified Complaint against Equiti US in which he swore that (1) Equiti US's CEO, who was a Managing Director of the worldwide Equiti "Group" that included Equiti UK and Equiti US, was aware that Blue Isle was making significant questionable currency trades that frequently lost significant money using a multi-account manager software which made it appear as Blue Isle was hiding losing trades from its clients and only reporting positive trades; (2) Equiti UK often allocated substantial monetary credits to Blue Isle, even though Equiti UK knew Blue Isle did not have sufficient funds to cover the credits, which raised red flags; (3) these unsecured credits caused Equiti UK to breach its margin limits with its own liquidity provider dozens of times; and (4) when the margin-limit breaches occurred, Equiti UK was forced to reject all other client trades.[2] *Id.*

Kirkland worked as an accountant at Equiti US from January 2, 2017 through December 4, 2018. *Id.*, ¶ 18 Kirkland was responsible for keeping records of the company's finances and was supervised directly by the Chief Financial Officer of Equiti UK. Ms. Kirkland worked on matters

---

[2] *See Mason v. Equiti US, LLC*, No. 50-2019-CA-016095 (15th Judicial Circuit, Palm Beach County, Florida, filed December 18, 2019).

related to an acquisition whereby Divisa US, LLC (Equiti US's predecessor entity) became Equiti US. And Kirkland worked with Equiti UK's CFO and legal counsel regarding subsequent ownership structure and registered status. Moreover, in December 2019, Kirkland filed a Complaint against Equiti US in which she made allegations regarding (1) Equiti UK's supervision of Equiti US; (2) Equiti US's ownership structure; and (3) Equiti US's financial reporting.[3] *Id*.

Through this Application, Applicants request information related to, among other things: (1) the Respondents' allegations in other litigation regarding the same operative facts as those that will be relevant in the U.K. Proceeding; (2) Equiti's US business dealing and relationship with Blue Isle and such other communications between and with Equiti UK about that relationship; (3) communications with Blue Isle; and (4) documents and testimony provided to the SEC, the U.S. Department of Justice, or any U.S. Attorney's Office relating to Equiti US and/or Blue Isle.[4]

Proposed subpoenas describing the documents and testimony Applicants seek from the Respondents for use in the U.K. Proceeding are attached as Exhibits A through H to the Application.

**ARGUMENT**

An application pursuant to 28 U.S.C. § 1782 requires both that the district court is statutorily authorized to grant the request, and, if so, that additional discretionary factors counsel in favor of doing so. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004);

---

[3] *See Kirkland v. Equiti US, LLC*, No. 9:19-cv-81713-RS (S.D. Fla., filed December 23, 2019).
[4] Additionally, the factual circumstances prompting Applicants to initiate the anticipated U.K. Proceeding against Equiti UK, are already the subject of separate litigation brought by the United States Securities and Exchange Commission against various entities alleged to be involved in the same fraud perpetrated by Equiti UK, including Blue Isle. *See United States Securities and Exchange Commission v. Mediatrix Capital Inc. et al*, No. 1:19-cv-02594-RM-SKC, (D. Colo., filed Sept. 12, 2019). That litigation remains pending in the United States District Court for the District of Colorado.

*United Kingdom v. United States*, 238 F.3d 1312, 1318-19 (11th Cir. 2001) ("Whether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court."); *Halliwell Assets, Inc. v. Hornbeam Corp. (In re Bracha Found.),* 663 Fed. Appx. 755, 757-58 (11th Cir. 2016).

### A. The Application Meets the Statutory Requirements of 28 U.S.C. § 1782

"The Eleventh Circuit has distilled § 1782 to include four statutory requirements."  *In re da Costa Pinto*, No. 17-22784-MC, 2019 U.S. Dist. LEXIS 84542, at *6 (S.D. Fla. May 16, 2019) (citing *Sergeeva v. Tripleton Int'l Ltd*., 834 F.3d 1194, 1198-99 (11th Cir. 2016)). The statutory requirements, set forth at 28 U.S.C. § 1782(a), provide in relevant part that (emphasis added):

> The district court of the district in which *a person resides* or is found may order him to give his *testimony or statement or to produce a document* or other thing for *use in a proceeding in a foreign...tribunal*. The order may be made...*upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

A district court may grant an application pursuant to 28 U.S.C. § 1782 if these factors are met. *In re Clerici,* 481 F.3d 1324, 1331-35 (11th Cir. 2007) ("district court has the authority to grant an application for judicial assistance if the [] statutory requirements in § 1782(a) are met.").

Here, the first requirement is met, as each of the Respondents, from whom Applicants seek discovery, resides and therefore is "found" within this District.  Equiti US, a Florida-registered limited liability company, maintains a principal place of business located at 11300 US Highway 1, Ste 200, North Palm Beach, FL 33408, which is within this District.  There is no question that a corporation "resides or is found" in a district where it is subject to "general" personal jurisdiction. *See Bristol Myers Squibb Co. v. Superior Court,* 137 S. Ct. 1773 (2017); *BNSF Railway Co. v.*

7

*Tyrrell,* 137 S. Ct. 1549 (2017); *Daimler A.G. v. Bauman,* 571 U.S. 117, 138-39 (2014); *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011) (all holding that a corporation is "at home" and amendable to jurisdiction in the state where it is incorporated and, if different, the place where it maintains its principal place of business). Dennison, Mason and Kirkland are also subject to this Court's general jurisdiction, given that Dennison maintains a residence at 153 Magnolia Way, Jupiter, Florida 33469; Mason maintains a residence at 136 Soriano Drive, Jupiter, Florida 33458; and Kirkland maintains a residence at 7885 155th Place N. West Palm Beach, FL 33418, all of which are within this District. *See Daimler,* 571 U.S. at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.").

Similarly straightforward, the second prong is met because the Application seeks documents and testimony which Applicants anticipate using as potential evidence in the anticipated U.K. Proceeding. Campbell Decl. ¶¶ 19-20; *see also Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc*., 747 F.3d 1262, 1269, 24 Fla. L. Weekly Fed. C 936 (11th Cir. 2014) (document production and deposition testimony were undisputed forms of potential evidence satisfying the second requirement); *In re Novoship (UK) Ltd*., No. 20-60876-MC, 2020 U.S. Dist. LEXIS 107257, at *7 (S.D. Fla. June 17, 2020) ("there is no indication that the courts of the United Kingdom would be unreceptive to American evidence.")

Third, Applicants seek documents and testimony from the Respondents for "use in a proceeding" in a "foreign tribunal." Campbell Decl. ¶¶ 20-21. The documents and testimony Applicants seek from the Respondents are highly relevant to their claims in the anticipated U.K. Proceeding. In particular, the documents and testimony the Respondents are anticipated to provide involve Equiti UK's collective involvement with Equiti US to provide services to Blue Isle and communications between and among Equiti US, Equiti UK, Applicants and Blue Isle related to

8

those services. For instance, Applicants seek documents, communications and testimony related to, among other topics, (1) Equiti UK's provision of credit (i.e. margin) to Blue Isle and (2) false account statements sent to Blue Isle investors, both of which involve suspicious conduct and are red flags involving Blue Isle about which Equiti US and Equiti UK were aware, or should have been aware. These issues form part of Applicants' contentions that Equiti UK's facilitation and concealment of the Blue Isle Fraud give rise to claims against Equiti UK for the significant financial losses they suffered. *See id.*, ¶ 19. Applicants have no reason to believe that the documents and testimony elicited from the Respondents will not be admissible in the U.K. Proceeding, nor that introduction of that evidence would be barred by any applicable law or local court rules. *See* Campbell Decl., ¶¶ 20-21. Notably, Courts in this jurisdiction have held that applications seeking discovery under 28 U.S.C. § 1782 for use in proceedings in the United Kingdom satisfy this requirement. *In re Novoship (UK) Ltd.*, No. 20-60876-MC, 2020 U.S. Dist. LEXIS 107257, at *7 (S.D. Fla. June 17, 2020) ("§ 1782 is routinely used to obtain evidence for proceedings in [the United Kingdom]"); *In re Emergency Ex Parte Application of Godfrey*, 2018 WL 1863749, at *10 (S.D. Fla. Feb. 22, 2018), *report and recommendation adopted sub nom., In re Godfrey*, 2018 U.S. Dist. LEXIS 29794, 2018 WL 1859344 (S.D. Fla. Mar. 15, 2018). *See also Servotronics, Inc. v. Boeing Co.*, 954 F.3d 209, 210 (4th Cir. 2020) (concluding that even an "arbitral panel in the United Kingdom is indeed a foreign tribunal for purposes of § 1782.").

It is well-established that discovery sought for use in an "anticipated" proceeding falls within the scope of the statute's requirements that the discovery sought be for "use in a proceeding," especially where, as here, Applicants have provided detailed information regarding their intent to proceed from their foreign counsel responsible for that anticipated proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004) (the statute "only requires that

a dispositive ruling by the [tribunal] be *within reasonable contemplation*") (emphasis added). The court's decision in *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.* 613 Fed. Appx. 319, 322-23 (5th Cir. 2015), is instructive. The circuit court in *Bravo Express Corp.* vacated the district court's denial of a Section 1782 application. In remanding it, with instruction to provide a written order, the circuit court specifically held that the applicants, who had not yet initiated proceedings in the U.K. but "intended to", satisfied Section 1782's second statutory requirement that discovery be sought "for use in a proceeding in a foreign or international tribunal." *Id*. at 323. In coming to this conclusion, the circuit court relied on both a sworn affidavit from applicants' counsel detailing the facts giving rise to the prospective lawsuit and confirming applicants' intent to file suit, and, later at the hearing on the application, further testimonial attestations that the applicants had prepared a claim letter setting forth their potential claims. *Id*.

Other courts have similarly held that a foreign proceeding need not be filed or actually pending before Section 1782 may be invoked. *See e.g., Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc*., 747 F.3d 1262, 1270 (11th Cir. 2014) (vacating denial of Section 1782 application where applicants sought discovery to support "contemplated civil and private criminal suits" in Ecuador based principally on findings from auditors that foreign adversary could be liable, and finding that support satisfied the court's duty to "insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time"); *Mees v. Buiter*, 793 F.3d 291, 300-01 (2d Cir. 2015) (holding that proceedings within reasonable contemplation qualified as foreign proceedings under Section 1782). *See also Ex Rel. Application of Winning (HK) Shipping Co.,* No. 09-22659-MC, 2010 WL 1796579, at *4 (S.D. Fla. Apr. 30, 2010) ("there is no requirement that the foreign proceeding be 'pending' or

10

even 'imminent' as long as the proceeding is 'within reasonable contemplation'") (quoting *Intel*, 542 U.S. at 253-54).

As noted, Applicants conduct is indicative of their intent to file claims against Equiti UK in the United Kingdom. Among other things, they have retained counsel in the U.K., and drafted and served upon Equiti UK an extensively detailed "Letter of Claim." Campbell Decl. ¶ 9. Under the Civil Practice Rules 1998, which govern procedure in the High Court of England and Wales ("the CPR"), the delivery of a "Letter of Claim" is a necessary precursor to the commencement of litigation, as stipulated by the applicable pre-action protocol. *Id.,* ¶ 11. This Application thus satisfies Section 1782's requirement that the discovery be "for use in a proceeding in a foreign tribunal." 28 U.S.C. § 1782.

Fourth, and lastly, each of Applicants are an "interested person" for purposes of Section 1782 because each expects to be a claimant in the anticipated U.K. Proceeding. *Id.,* ¶ 7. The Supreme Court has affirmed that the statute extends to parties to a foreign proceeding, and even more expansively, "plainly reaches beyond the universe of persons designated 'litigant.'" *Halliwel Assets, Inc. v. Hornbeam Corp. (In re in re Bracha Foundation)*, 663 F. App'x 755, 763 (11th Cir. 2016) (citing *Intel,* 542 U.S. at 256-57). Accordingly, Applicants have demonstrated that their request satisfies all of the statutory requirements of Section 1782.

### B. The Discretionary *Intel* Factors Weigh in Favor of Granting the Application

Once an applicant establishes the statutory elements of 28 U.S.C. § 1782, a court looks to additional factors to determine whether to exercise its discretion to order the discovery produced. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). The further "discretionary" factors identified in *Intel* are as follows:

(1) Whether the party from whom discovery is sought is a participant in the foreign proceeding;

11

    (2)    The nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of relevant foreign authorities to U.S. federal court assistance;

    (3)    Whether the requests conceal an attempt to circumvent foreign proof-gathering practices; and,

    (4)    Whether the requests are unduly intrusive or burdensome.

*Intel,* 542 U.S. at 264-65. Applicants respectfully submit that the discretionary factors also weigh in favor of allowing them to seek the requested discovery from the Respondents.

    **1.**    **The Respondents Are Not Parties to the U.K. Proceeding**

This factor is undisputed, as the Respondents will not be parties in the anticipated U.K. Proceeding, and, therefore will remain outside the power of the High Court of England and Wales to compel production. Campbell Decl. ¶¶ 13, 21-22; *see also Intel,* 542 U.S. at 264 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding...the need for § 1782(a) generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."); *accord Halliwel Assets, Inc. v. Hornbeam Corp. (In re in re Bracha Foundation)*, 663 F. App'x 755, 764-65 (11th Cir. 2016). However, as discussed, Applicants believe that the Respondents, due to their roles as a subsidiary of Equiti UK, and employees thereof, who worked with Equiti UK to provide services to Blue Isle, possesses information and/or documents regarding Equiti UK's facilitation, concealment, and knowledge of the Blue Isle Fraud which is central to Applicants' anticipated claims in the U.K. Proceeding.[5] *Id.,* ¶¶ 14-18. This factor, thus, weighs in favor of granting Applicants' request to obtain discovery from the Respondents.

---

[5] *See* discussion at page 4-5, *supra*.

2.  **Section 1782 Applications Are Routinely Granted When the Discovery Sought is for Use in Proceedings in the U.K.**

As stated above, district courts have granted Section 1782 applications where discovery is sought for use in an anticipated proceeding in the U.K. *See, e.g., In re Novoship (UK) Ltd.*, No. 20-60876-MC, 2020 U.S. Dist. LEXIS 107257, at *7 (S.D. Fla. June 17, 2020) ("§ 1782 is routinely used to obtain evidence for proceedings in [the United Kingdom]"); *In re Emergency Ex Parte Application of Godfrey*, 2018 WL 1863749, at *10 (S.D. Fla. Feb. 22, 2018), *report and recommendation adopted sub nom., In re Godfrey*, 2018 U.S. Dist. LEXIS 29794, 2018 WL 1859344 (S.D. Fla. Mar. 15, 2018). Based on this rationale, courts have concluded that "there is no indication that the courts of the United Kingdom would be unreceptive to American evidence." *In re Novoship (UK) Ltd.*, No. 20-60876-MC, 2020 U.S. Dist. LEXIS 107257, at *7 (S.D. Fla. June 17, 2020). As detailed in the supporting declaration from U.K. counsel, it is expected that the documents and testimony elicited from the Respondents will be admissible in the U.K. Proceeding and are not barred by any applicable law or local court rules. Campbell Decl. ¶¶ 19-21. Indeed, the CPR contemplates that parties to proceedings within the High Court of England and Wales will engage in discovery and allows for the submission of documentary evidence. *Id.* The second discretionary *Intel* factor therefore also favors granting the Application.

3.  **Applicants' Request Does Not Attempt to Circumvent Foreign Proof-Gathering Practices**

Applicants seek documents and testimony from the Respondents, who are known to have documents and information concerning the facts underlying the claims Applicants intend to assert in the anticipated U.K. Proceeding. The Respondents, who reside and are located in the United States, are beyond the power of the High Court of England and Wales to compel them to provide that evidence. Accordingly, and as is commonplace, Applicants have turned to Section 1782 to obtain evidence necessary to proceed on their claims in the U.K. Proceeding. The Subpoenas that

Applicants intend to issue to the Respondents are being served in the interests of efficiency and solely to assist them to prepare and litigate their claims in the U.K. Proceeding. As previously noted, the CPR contemplates that parties to proceedings in the High Court of England and Wales will engage in discovery and allows for the submission of documentary evidence. *See In re Mesa Power Group, LLC*, 878 F. Supp. 2d 1296, 1305 (S.D. Fla. 2012) ("Absent a persuasive showing that a section 1782 applicant . . . is actively seeking to circumvent the foreign tribunal's discovery methods and restrictions, . . . this factor does not counsel against section 1782 relief."). *See also* Campbell Decl. ¶¶ 19-20. No judicial authority in the U.K. has rejected any effort by Applicant to obtain the requested documents and other materials. *Id.*, ¶ 22. Accordingly, the third discretionary *Intel* factor is met.

   **4. The Discovery Sought from the Respondents Is Specific, Narrow, and Not Unduly Intrusive or Burdensome**.

Applicants' requests are limited to discrete issues that are narrowly tailored to obtain information regarding the actions taken by Equiti UK in connection with its facilitation and concealment of the Blue Isle Fraud. Applicants' requests specifically seek documents the Respondents are known, or credibly suspected, to have in their possession or control and are narrow in scope, seeking documents and testimony limited to: (1) the Respondents' allegations in other litigation regarding the same operative facts as those that will be relevant in the U.K. Proceeding; (2) Equiti UK's business dealing and relationship with Blue Isle; and (3) communications with Blue Isle. *See Application,* Exhs. A-H. Each of these topics is relevant to Applicants' claims against Equiti UK in the anticipated U.K. Proceeding. *See id.* ¶¶ 4-7.

Furthermore, any burden on the Respondents is anticipated to be minimal to the extent they are being commanded to produce documents already preserved, identified and/or produced in other litigation involving the same operative facts. For instance, Mason filed a verified complaint against

Equiti US alleging that Equiti UK was aware of the Blue Isle Fraud and facilitated it through the provision of liquidity. Equiti US made allegations of its own regarding the Blue Isle Fraud in counterclaims it asserted against Mason. Moreover, the U.S. Securities and Exchange Commission has conducted an investigation and initiated litigation against Blue Isle for the Blue Isle Fraud. To the extent the Respondents preserved, identified, collected or produced documents regarding the Blue Isle Fraud in the other litigations, their burden to reproduce those documents in response to the Subpoenas would be minimal. *See Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1273, 24 Fla. L. Weekly Fed. C 936 (11th Cir. 2014) (rejecting blanket claims of burden); *In re Mesa Power Group, LLC*, 878 F. Supp. 2d 1296, 1306 (S.D. Fla. 2012) ("no undue burden exists because the discovery requests being compelled through this Order are sufficiently tailored.").

Finally, granting the relief requested through this *ex parte* Application is not unfair to the Respondents, who will remain able to avail themselves of rights under Fed. R. Civ. P. 45(c), and rules applicable to discovery generally (including rules to protect any information that is proprietary or privileged). *See In re Pons*, No. 1:19-MC-23236, 2020 U.S. Dist. LEXIS 162839, at *10-11 (S.D. Fla. Sep. 7, 2020) ("protections of Rule 45 apply to persons subpoenaed under Section 1782"). (internal citations omitted).

## CONCLUSION

For the above stated reasons, Applicants respectfully request that the Application be granted and an Order directing service of the draft subpoenas attached to it as Exhibits A and H be issued.

**Dated: February 22, 2021**

**FAEGRE DRINKER BIDDLE & REATH LLP**

By: */s/ Traci T. McKee*
    Traci T. McKee

Traci T. McKee, Bar No. 0053088
traci.mckee@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1050 K Street NW, Suite 400
Washington, D.C. 20001
Telephone:   +1 202 312 7028
Facsimile:   +1 202 312 7461

*Attorney for Applicants*