IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

|  |  |
|---|---|
| In re Application | Case No. _____ |
| Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Equiti US, LLC, Gary Dennison, James Mason, and Kimberly M. Kirkland for Use in a Foreign Proceeding | Filed EX PARTE |

**DECLARATION OF ROBERT K. CAMPBELL IN SUPPORT OF APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER TO TAKE DISCOVERY OF EQUITI US, LLC, GARY DENNISON, JAMES MASON, AND <u>KIMBERLY M. KIRKLAND FOR USE IN A FOREIGN PROCEEDING</u>**

I, Robert K. Campbell, declare and state as follows:

1. I am a solicitor of the Senior Courts of England Wales. I was admitted to practice in England and Wales in 1994 and I have practiced continuously in England since March 1994. My practice covers many areas of civil litigation, including disputes relating to the financial services sector.

2. I am submitting this Declaration in support of: (1) Oak Trust, (2) Acorn Trust, (3) Eagle Trust, (4) Duffy Trust, (5) Robert J. Parfet Living Trust, (6) Geluk Global Fund Limited SAC (a company incorporated in the Bahamas), (7) Migration Investments, LLC (a Colorado, US LLC ), (8) Boustrophedon International Ltd (a company incorporated in Hong Kong), (9) Michael R. Shea, (10) Erin Shea, (11) Angela Ling, (12) Fuhua Ling, (13) Philip Bullock, (14) Lifang Liu, (15) Justin Payne, (16) Michael Dietzen, (17) Kimberly J. Dietzen, (18) Brian Sly, (19) David K. Sly, (20) Gregory Sly, (21) Karen Sly, (22) Nelson Sly, (23) Helen S. Sly, (24) Sly Family Trust, and (25) Tamara A. Sly Separate Property Trust's (together, the "Applicants") Application

1

Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Equiti US, LLC ("Equiti US"), Gary Dennison ("Dennison"), James Mason ("Mason"), and Kimberly M. Kirkland ("Kirkland") (together, the "Respondents") for Use in a Foreign Proceeding (the "Application").

3. Applicants anticipate initiating a proceeding as claimants in the High Court of England and Wales in London, England (the "U.K. Proceeding").

4. Applicants have each suffered loss as a result of the wrongful conduct of Equiti Capital UK Limited ("Equiti UK") in its facilitation and concealment of a fraudulent Forex trading scheme ("the Blue Isle Fraud") operated by Mediatrix Capital Inc. ("Mediatrix"), Blue Isle Markets Inc. ("Blue Isle 1"), and Blue Isle Markets Ltd. ("Blue Isle 2") (collectively referred to as "Blue Isle"), in which Applicants and others invested.

5. The Blue Isle Fraud involved multiple components. First, Blue Isle fraudulently induced investment through material misrepresentations, including regarding the profitability of their trading history, the value of their assets under management, having audited trading results, and their regulated status. Then, Blue Isle fraudulently induced investors to maintain and/or increase their investments by falsifying investors' account statements to show phantom profits and making Ponzi-like payments to investors who opted to cash out their "profits," all in an effort to prop-up the façade of profitable trading and perpetuate the fraud. Ultimately, Blue Isle's fraudulent scheme resulted in massive trading losses of the funds that were invested in order to further perpetuate the fraud and allowed Blue Isle to misappropriate funds—both directly and through taking unearned performance fees based on falsified trading results.

6. On the basis of currently available information, the relationship between Equiti UK and Blue Isle began in or around February-March 2016 when under its direction and supervision, Equiti UK's wholly-owned subsidiaries in the U.S. and Armenia entered into agreements with

2

Blue Isle. The relationship between Blue Isle and Equiti UK was subsequently formalized in a customer agreement dated June 12, 2007. From February-March 2016 until September 2019, Equiti UK provided brokerage services, trade execution and margin services to Blue Isle for which it appears to have earned and claimed more than $12 million in circumstances where it knew, or alternatively should have known, that Blue Isle was operating a fraudulent scheme of which Applicants were among the victims. Further or alternatively, Equiti UK failed to perform adequate due diligence both initially and on an ongoing monitoring basis, which had they performed—as they represented to investors that they did—would have revealed "red flags" that became more numerous and severe with the passage of time and which should have alerted it to the fraudulent nature of Blue Isle's scheme. Equiti UK should have inquired further into Blue Isle in the face of the escalating "red flags," including for example, when Blue Isle told Equiti UK it had $25 million in assets and was trading "$15 billion+" annually. In sum, the Blue Isle Fraud was made possible by either Equiti UK's knowing acquiescence or its deliberate blindness.

7. As a result, on the basis of the information currently available, Applicants intend to pursue claims against Equiti UK pursuant to the laws of England and Wales for damages and/or equitable compensation under various legal theories stemming from Equiti UK's role in connection with Blue Isle fraud.

8. Applicants' efforts to resolve the claim without initiating proceedings in the High Court in London have been unsuccessful. Applicants have retained a barrister in the U.K. to assist them and their counsel based in the United States with bringing the anticipated litigation before the High Court of Justice in London, England, U.K.

9. Accordingly, on November 26, 2020, Applicants finalized and served upon Equiti UK a "Letter of Claim" that detailed the factual and legal bases supporting their claims against

Equiti UK pursuant to the laws of England and Wales for damages and/or equitable compensation under various legal theories stemming from Equiti UK's role in connection with Blue Isle's fraud.

10. Applicants anticipate that they will seek approximately $31,817,245.06 from Equiti UK on the alleged grounds that Equiti UK's conduct resulted in Applicants sustaining a total loss of their net principal investments, less any redemption amounts received.

11. Under the Civil Practice Rules 1998, which govern procedure in the High Court ("the CPR"), the delivery of a "Letter of Claim" is a necessary precursor to the commencement of litigation, as stipulated by the applicable pre-action protocol. Following service of the Letter of Claim, the recipient, being the prospective defendant, has a reasonable period in which to respond. What is considered reasonable is dependent on the complexity of the dispute, the breadth of the underlying factual matrix and any other relevant factors. The response must acknowledge the Letter of Claim, either accepting it or, alternatively, responding in detail as to the reasons why the claim is not accepted, including providing an explanation of which facts and parts of the claim are disputed.

12. On February 16, 2021, Equiti UK responded in a letter, through its counsel Linklaters, denying any liability and arguing, among other grounds, that it did not know about the fraud taking place through the Blue Isle accounts held at Equiti UK and defying Applicants to prove otherwise legally and factually. As a defense, Equiti UK states it will not stipulate to the veracity of the SEC's claims regarding the underlying Blue Isle Fraud but rather will put Applicants to their proof regarding that fraud, aspects of which involved Equiti US.

13. The Respondents are not expected to be a party to the anticipated U.K. Proceeding.

14. Rather, upon information and belief, Respondents are in possession of information and/or documents relevant to Applicants anticipated claims in the U.K. Proceeding.

15. Equiti US is a wholly owned subsidiary of Equiti UK that provided technology and support services to help facilitate Blue Isle's trading through Equiti UK, operating under the direction of Equiti UK. Equiti US also assisted Equiti UK in soliciting investors for Blue Isle, participated in regular meetings between Equiti and Blue Isle, provided services directly to Blue Isle investors, and was directed and supervised by Equiti UK.

16. As a subsidiary of Equiti UK, who closely partnered with Equiti UK to provide services to Blue Isle, Equiti US likely possesses documents and information relevant to, among other things, (1) the facilitation of the Blue Isle Fraud; (2) the ownership and organizational structure of Equiti entities; (3) the flow of investor funds into accounts at Equiti UK; (4) the provision of brokerage services and liquidity to Blue Isle; (5) Equiti US's participation in the solicitation of investors for Blue Isle; (6) the provision account statements and customer support to Blue Isle investors; and (7) any due diligence performed on Blue Isle. Gary Dennison is the Chief Operating Officer of Equiti US who worked closely with Blue Isle and Equiti UK and likely possesses documents and information relevant to these topics as well.

17. Mason is the former Chief Operating Officer at Equiti US. Mason was Equiti US's officer in charge of managing the Blue Isle relationship and was directed and supervised by Equiti UK. In December 2019, Mason filed a Verified Complaint against Equiti US in which he swore that (1) Equiti US was aware that Blue Isle was making significant questionable currency trades that frequently lost significant money using a multi-account manager software which made it appear as Blue Isle was hiding losing trades from its clients and only reporting positive trades; (2) Equiti UK often allocated substantial monetary credits to Blue Isle, even though Equiti UK knew Blue Isle did not have sufficient funds to cover the credits, which raised red flags; (3) these unsecured credits caused Equiti UK to breach its margin limits with its own liquidity provider

5

dozens of times; and (4) when the margin-limit breaches occurred, Equiti UK was forced to reject all other client trades.[1]

18. Kirkland worked as an accountant at Equiti US from January 2, 2017 through December 4, 2018. Kirkland was responsible for keeping records of the company's finances and was supervised directly by the Chief Financial Officer of Equiti UK. Ms. Kirkland worked on matters related to an acquisition whereby Divisa US, LLC (Equiti US's predecessor entity) became Equiti US. And Kirkland worked with Equiti UK's CFO and legal counsel regarding subsequent ownership structure and registered status. Moreover, in December 2019, Kirkland filed a Complaint against Equiti US in which she made allegations regarding (1) Equiti UK's supervision of Equiti US; (2) Equiti US's ownership structure; and (3) Equiti US's financial reporting.[2]

19. Accordingly, the Respondents possess information and/or documents relevant to Equiti UK's facilitation and concealment of the Blue Isle Fraud that is central to Applicants' anticipated claims in the U.K. Proceeding.

20. It is expected that the documents and testimony elicited from the Respondents will be admissible in the U.K. Proceeding and are not barred by any applicable law or local court rules.

21. U.K. litigation and local court rules contemplate that parties to proceedings within that jurisdiction will engage in discovery and allow for the submission of documentary evidence.

22. The U.K. Court, however, does not have jurisdiction over the Respondents, who reside and have their principal place of business in the United States.

23. No judicial authority in the U.K. has rejected any effort by Applicants to obtain the requested documents and other materials.

---

[1] *See Mason v. Equiti US, LLC*, No. 50-2019-CA-016095 (15th Judicial Circuit, Palm Beach County, Florida, filed December 18, 2019).
[2] *See Kirkland v. Equiti US, LLC*, No. 9:19-cv-81713-RS (S.D. Fla., filed December 23, 2019).

6

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 19th day of February 2021.

Robert K. Campbell